UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN KAILIN and KIM KAILIN, on their own behalf and on behalf of their daughter, TAYLOR KAILIN, a minor, ) ) ) ) | |
| Plaintiffs, ) ) | No. 19 C 5188 |
| v. ) ) | Judge Sara L. Ellis |
| DELANTE GREER, UNIDENTIFIED OFFICERS, and VILLAGE OF GURNEE, ) ) ) | |
| Defendants. ) | |

## OPINION AND ORDER

After their dog died in a police-involved shooting, Plaintiffs Steven and Kim Kailin, on their own behalf and on behalf of their daughter, Taylor, filed this civil rights suit against Defendants the Village of Gurnee, Delante Greer, a Gurnee police officer, and Unidentified Officers. The Kailins bring claims for excessive force and illegal seizure pursuant to 42 U.S.C. § 1983, as well as state law claims for intentional infliction of emotional distress ("IIED") and assault against Greer and the Unidentified Officers. Kim, Steven, and Taylor also bring a claim against the Village pursuant to § 1983 for failure to train its officers under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978), in addition to state law claims for *respondeat superior* and indemnification. Greer and the Village have filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] Because no material

---

[1] The parties do not address the status of the Unidentified Officers, although the Court notes that the statute of limitations against these individuals has likely run at this time. Because Greer and the Village's arguments for summary judgment would apply equally to the Unidentified Officers, the Court extends them to the Unidentified Officers because Kim, Steven, and Taylor had the opportunity to respond. *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986) (court may *sua sponte* enter judgment in favor of additional non-moving defendants if motion by one defendant is equally effective in barring claim against other defendants and plaintiff had adequate opportunity to respond to the motion).

question of fact exists as to Defendants' liability on any of the claims, the Court grants summary judgment [75].

## BACKGROUND[2]

On July 26, 2019, Kim called the non-emergency number for the Gurnee Police Department, asking to have an officer come to her home after learning that Taylor allegedly had inappropriate sexual contact with her brother's friend the night before. Greer responded to the call, unaware that the Kailins had a dog, a rescue dog named Timber. The Kailins had Timber for approximately two months at the time, training Timber as a service dog for Taylor. After Greer asked Kim to put the dog away, Timber suddenly charged Greer and chased him into a neighboring yard all while barking and growling at him. Greer's body worn camera shows Timber suddenly running out from the house to chase him. Timber also lunged and attempted to bite Greer several times. After unsuccessfully trying to deploy his taser, Greer fired one shot with his gun at Timber's head and neck area, thereby killing the dog. Greer stated that due to the angle he could not effectively use the taser and there were no viable alternative other than to shoot the dog.

As a result of the shooting, the Gurnee Police Department conducted a review of the incident and determined that Greer's use of deadly force against Timber had been both

---

[2] The Court derives the facts set forth in this section from Defendants' Local Rule 56.1 Statement of Undisputed Material Facts. Steven, Kim, and Taylor failed to participate in the drafting of a joint statement of undisputed facts, as required by the Court's summary judgment procedures. Because the Court's procedures are not advisory and Steven, Kim, and Taylor failed to abide by them, the Court finds it appropriate to treat Defendants' facts as established. *See* N.D. Ill. LR 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party."); *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 411 (7th Cir. 2019) ("According to well-established Seventh Circuit law, that noncompliance [with the court's summary judgment procedures] meant that the district court could exercise its discretion to accept Kreg's statements of fact as undisputed."). As for Steven, Kim, and Taylor's additional facts, the Court considers them to the extent they actually create a disputed fact and are appropriately presented and supported, disregarding any statements that rely solely on hearsay evidence. The Court takes the facts in the light most favorable to Steven, Kim, and Taylor, the non-movants.

reasonable and necessary. Greer thereby received no discipline. In his investigation notes, Sergeant Mann, Greer's superior who conducted the investigation, noted that Greer indicated that he did not fear death but rather was worried about getting injured and missing work as a result.

When Sergeant Mann interviewed Steven and Kim shortly after the incident, Steven stated that what Greer did was "1,000% right." Doc. 78-8 at 62. Mann's body worn camera recorded Steven stating that Greer had to defend himself and asking Sergeant Mann to apologize to Greer on their behalf. However, at her deposition, Kim testified that she did not agree that Greer did not do anything wrong, insisting instead that the shooting of their dog was out of line and that Greer acted impulsively. Neither Kim nor Steven indicated to Sergeant Mann that they saw Greer point his gun at Kim. Kim noted only that she heard a pop and saw the dog fall down.

At her deposition, Taylor testified that through the window, she saw Greer attempting to get his gun out of the holster and point it at her mom, with it appearing as if Greer planned to shoot Kim instead of the dog. Janet McGilvery, a neighbor of the Kailins, saw Timber jump to bite Greer at the same time she heard a shot. She then saw the dog fall to the ground. McGilvery also stated that Greer had no choice but to shoot the dog.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine

dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

### I. Excessive Force Claim

Greer first seeks summary judgment on Kim's excessive force claim. As the Court clarified in ruling on Defendants' motion to dismiss this claim, this claim does not encompass Greer's shooting of Timber but instead involves only Greer's alleged use of force against Kim by pointing the gun and firing shots in her direction. Doc. 27.

"Excessive force is a form of unreasonable seizure in violation of the Fourth Amendment." *Tate v. City of Chicago*, No. 19 C 7506, 2020 WL 6715660, at *4 (N.D. Ill. Nov. 16, 2020). These types of claims "are evaluated based on whether the officer's actions were objectively reasonable under the circumstances." *Watson v. Fulton*, No. 15 C 11559, 2020 WL 1248678, at *6 (N.D. Ill. Mar. 16, 2020) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

And "courts give considerable leeway to law enforcement officers' assessments about the appropriate use of force in dangerous situations," but "[that] latitude ends, however, when police officers employ force that is clearly excessive or unreasonable under the circumstances." *Baird v. Renbarger*, 576 F.3d 340, 342 (7th Cir. 2009). Reasonableness "must be judged from the perspective of a reasonable officer on the scene" and not on hindsight. *Graham*, 490 U.S. at 396. The "proper application [of the standard] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)).

Here, Greer argues that Kim's excessive force claim fails because no evidence exists that he pointed his weapon at Kim. In other words, he argues that he never seized her, a prerequisite to an excessive force claim. *Tate*, 2020 WL 6715660, at *4. The record reflects that both Kim and Steven never saw Greer point his gun at Kim. And Greer testified only that he fired one shot directly into Timber's neck and head area. In response, however, Kim argues that Taylor's testimony creates an issue of fact on this question. At her deposition, Taylor testified that Greer pointed his weapon at Kim and that it looked like he would shoot her mom, although, in the end, Greer actually shot the dog. Although Kim testified that she did not see Greer point his gun at anyone or anywhere other than at Timber, Taylor's testimony creates a question of fact as to whether Greer pointed the weapon at Kim.

Ultimately, however, this question of fact is immaterial to resolution of the excessive force claim because it does not create a question as to whether Greer ever seized Kim. *See Torres v. City of Chicago*, No. 12 C 7844, 2016 WL 4158914, at *6 (N.D. Ill. Aug. 5, 2016) ("[T]he court's first task is to determine if the officers' conduct caused Torres to be seized."). A

5

"person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Griffin*, 652 F.3d 793, 798 (7th Cir. 2011) (citing *United States v. Mendenhall*, 446 U.S. 544, 553 (1980)). Here, Greer did not use physical force, which "always constitutes a seizure," against Kim. *Id.* And "a 'show of authority' alone is insufficient" to establish a seizure, with "an officer's show of authority becom[ing] a seizure only if the person at whom it is directed actually submits to that authority." *Id.* (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). Thus, in order for Kim to demonstrate that Greer seized her, she must establish that she actually submitted to Greer's alleged show of authority. *Id.* at 800–01 ("[A] seizure by submission following a show of authority . . . does not occur *unless* and *until* the suspect submits."). Here, no evidence suggests that Kim did so, and indeed her testimony that she never saw Greer point his weapon at her prevents any such conclusion. At best, Greer's decision to pull his weapon could constitute an attempted seizure of Kim. *See Torres*, 2016 WL 4158914, at *7 ("[Torres] testified that . . . from his vantage point in his car, which was parked in a carport, he did not see the police car parked behind him. The presence of the parked car behind Torres' car that would have prevented him from backing out of the carport if he had tried to do so—which is the plaintiffs' basis for claiming that a seizure occurred—thus played no role in the events on the night of October 1, 2010. The officers' decision to block Torres' car using their squad car is, therefore, at best an attempted seizure."). But an attempted seizure does not implicate the Fourth Amendment. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 n.7 (1998). Thus, even if a jury credited Taylor's testimony that Greer pointed his gun at Kim, no reasonable jury could find the prerequisite seizure for Kim's excessive force claim and so Kim cannot prevail on that claim.

**II.     Assault Claim**

Greer similarly argues that Kim's assault claim fails because the evidence does not support a finding that Greer pointed his weapon at her or in her direction. As the Court noted in connection with the excessive force claim, a question of fact exists on this point. But again, this does not necessarily warrant allowing the assault claim to proceed to trial. Illinois law defines civil assault as "an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." *Parrish by Bowker v. Donahue*, 110 Ill. App. 3d 1081, 1083 (1982). An assault requires "a threatening gesture, or an otherwise innocent gesture made threatening by the accompanying words." *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004).

Although Kim admits that she did not see Greer point his weapon at her, she argues that she did not have to see Greer do so in order to succeed on her assault claim, citing to several cases for support. *See People v. Wayman*, 379 Ill. App. 3d 1043 (2008); *Amos v. State of Illinois*, 55 Ill. Ct. Cl. 368 (2003); *People v. Ivy*, 133 Ill. App. 3d 647 (1985). But none of these cases help Kim here. In *Amos*, the court determined that the officer committed an assault upon the plaintiff when he shot the plaintiff's dog because the plaintiff had the dog in her arms. *Amos*, 55 Ill. Ct. Cl. at 379. Here, although Kim ran out after the dog, no reasonable jury could find that Kim and the dog "were so close [that] they were as one" so as to place Kim in fear of a battery when Greer aimed and pulled the trigger on his gun. *Cf. id*. ("When George pulled his gun, threatened to kill the dogs and aimed his .45 towards the dogs and Claimant, he created a well-founded fear of imminent peril for Claimant. She was on the floor with both dogs against her body when George fired his gun at the dog."). Although *Ivy* noted that "it is not necessary that

7

the victim of an aggravated assault actually see the weapon before [she] may be said to be in reasonable apprehension of receiving a battery," the defendant in that case made "repeated threats to 'blow [the plaintiff] out of the house' while she was pointing a bag at [the plaintiff's] face." *Ivy*, 133 Ill. App. 3d at 655. Similarly, in *Wayman*, although the defendant did not directly threaten the plaintiff with a gun, the defendant had pointed the gun at himself during an earlier, heated argument and stated that he would not let the plaintiff leave. *Wayman*, 379 Ill. App. 3d at 1061. As she was leaving, the plaintiff heard gunshots, which caused her to fear for her safety. *Id.* at 1062. Unlike in *Ivy* and *Wayman*, here, Greer did not direct any threatening words at Kim and she has not pointed to any evidence that she herself perceived any threats from Greer. Therefore, she cannot rely on these cases to suggest that a reasonable jury could find that Greer placed her in imminent fear of receiving a battery despite the fact that she never saw him point his gun at her. And without any evidence to support such a fear, she cannot prevail on her assault claim.

### III. Illegal Seizure Claim

Greer next argues that Kim, Steven, and Taylor's illegal seizure claim concerning Timber's shooting fails because the record demonstrates that Greer acted reasonably under the Fourth Amendment in shooting Timber. "[T]he Fourth and Fourteenth Amendments provide a remedy when a citizen's property is unreasonably damaged during a search." *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) ("Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." (citing *United States v. Ramirez*, 523 U.S. 65, 71 (1998))). Because "domestic animals are 'effects' within the meaning of the Fourth Amendment," the "unnecessary killing of a person's pet offends the Fourth Amendment." *Viilo*

8

*v. Eyre*, 547 F.3d 707, 711 (7th Cir. 2008) (citing *Siebert v. Severino*, 256 F.3d 648, 656 (7th Cir. 2001)); *see also Phillips v. City of Chicago*, No. 12 C 9895, 2013 WL 4779185, at *1 (N.D. Ill. 2013) ("[A] police officer who unreasonably kills or maims a person's pet violates that person's Fourth Amendment rights."). "[T]he use of deadly force against a household pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable." *Viilo*, 547 F.3d at 711 (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210–11 (3d Cir. 2001)).

Greer maintains that the record supports the conclusion that he acted reasonably, pointing first to footage from his body worn camera, which shows Timber charging out to chase Greer. Indeed, the evidence indicates that Timber barked and growled at Greer while chasing him, nipping and attempting to bite him. Kim, Steven, and Taylor argue that Timber never barked nor growled at Greer and cite to their testimony in which they testified that Timber was simply playing. But the body worn camera disputes their allegations of Timber's playfulness with Greer, and that evidence governs here. *See Scott v. Harris*, 550 U.S. 372, 379–80 (2007) ("The videotape quite clearly contradicts the version of the story told by respondent…[and] [w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Moreover, according to Mann's body worn camera, Steven stated that Greer did what he needed to do and that Steven would have done the same thing if confronted in a similar manner. Thus, because the body worn camera controls and shows Timber acting in the way Greer and McGilvrey testified, the Kailins cannot create a dispute of fact on this issue.

Kim, Steven, and Taylor additionally argue that factual disputes exist as to whether Timber posed an immediate threat to Greer, pointing to Sergeant Mann's internal investigation

9

notes in which Greer stated he was not in fear of death if he got bitten by the dog but rather was worried about getting injured and missing work. Kim, Steven, and Taylor further argue that, although Greer had a flashlight, pepper spray, and a taser at his disposal, because Greer did not mitigate the situation by using any of that equipment, that creates a factual dispute warranting a denial of summary judgment.

The inquiry for an illegal seizure claim under the Fourth Amendment is whether a household pet poses an "immediate danger" and the use of force was unavoidable, not necessarily whether the individual fears for his life. *Brooker v. Abate*, No. 18 C 50111, 2020 WL 5819872, at *5 (N.D. Ill. Sept. 30, 2020), *aff'd*, No. 20-3123, 2021 WL 4622399 (7th Cir. Oct. 7, 2021). And although Greer may not have feared for his life at the time Timber charged him, his testimony and the evidence reflects that Timber posed an immediate danger of seriously injuring him by charging at him. *See Moffett v. Sandoval*, No. 10-CV-5324, 2012 WL 2526624, at *2 (N.D. Ill. June 28, 2012) ("the jury chose to believe the officers, who claimed that Officer Sandoval shot Chief because the dog was lunging toward them."). Further his testimony indicates he attempted to deploy his taser first before using his gun. Greer stated that moving directly to shoot the dog was the most appropriate course of action, as he believed there were no viable alternative because due to the angle could not effectively use the taser in the moment. As such, the use of the gun became unavoidable.

Kim, Steven, and Taylor further cite to *Anderson v. City of Chicago*, No. 16-CV-00726, 2018 WL 2412337 (N.D. Ill. May 29, 2018), and *Taylor v. Rodriguez*, No. 16-CV-8159, 2018 WL 4635647 (N.D. Ill. Sept. 27, 2018), in support of their argument. In both cases, the court determined that material factual disputes regarding whether the dogs posed an imminent threat to the officers and whether the officer's use of force was unavoidable precluded summary

judgment. *Anderson*, 2018 WL 2412337, at *4; *Taylor*, 2018 WL 4635647, at *4. But these cases are distinguishable. First, the court in *Anderson* noted that no eyewitnesses observed the actual shooting of the plaintiffs' dog. 2018 WL 2412337, at *2. Here, McGilvery, a neighbor of the Kailins, saw Timber jump to bite Greer at the same time she heard a shot and stated that Greer had no choice but to shoot the dog, and the body worn camera also shows the actual chase. And, in *Taylor*, the officer "killed Plaintiffs' dog when it was on the other side of a closed, chain-link fence," 2018 WL 4635647, at *5, whereas here, Timber charged towards Greer, closing in on him as they neared a neighbor's lawn. Thus, the only reasonable conclusion that one can draw from the evidence is that the dog posed a threat to Greer's safety, albeit not creating a fear of death, warranting his use of force. *See Brooker*, 2020 WL 5819872, at *6 ("This evidence suggests that the pit bull -- which Deputy Marino describes as being unsecured, large in size, and acting aggressively towards him in the moments before each shot was fired -- posed an immediate threat to Deputy Marino's safety and that the use of force was unavoidable under the circumstances."). Therefore, no reasonable jury could find that Greer acted unreasonably by shooting Timber, meaning that Kim, Steven, and Taylor's unreasonable seizure claim fails.[3] *See Maldonado v. City of Hammond, Indiana*, No. 2:14CV310-PPS, 2016 WL 6093596, at *3 (N.D. Ind. Oct. 18, 2016) ("None of the plaintiffs' evidence challenges or rebuts Kreischer's testimony that Lilly ran toward him barking and growling, and that she lunged at Kreischer with her teeth bared. That undisputed scenario establishes that Kreischer's response by shooting the dog was objectively reasonable.").

---

[3] Greer also argues that he is entitled to qualified immunity on the illegal seizure claim. Because the Court has determined that summary judgment is proper on the merits of the claim itself, the Court does not address this argument.

11

IV.     *Monell* **Claim against the Village**

The Village argues that Kim, Steven, and Taylor cannot prevail on their *Monell* claim because they have not shown that the Village failed to train its police officers on interactions with household pets. Pursuant to *Monell*, a plaintiff can sue a municipality under § 1983 when the municipality's policy or practice was the "moving force of the constitutional violation." 436 U.S. at 694. A plaintiff can demonstrate this with: (1) evidence of enforcement of an express policy that would cause the constitutional deprivation; (2) evidence of a common practice so widespread it constituted a custom or usage with the force of law, despite not being a written or express policy; or (3) evidence that a person with final policy-making authority caused the harm. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). A plaintiff may prevail on a *Monell* claim based on inadequate training or supervision by showing "(1) failure to provide adequate training in light of foreseeable consequences; or (2) failure to act in response to repeated complaints of constitutional violations by officers." *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029–30 (7th Cir. 2006); *Lee v. McNeal*, No. 07 C 6856, 2008 WL 4812653, at *6 (N.D. Ill. Oct. 29, 2008).

Here, the Village first argues that, because Kim, Steven, and Taylor's § 1983 claims fail against Greer, they cannot establish that the Village caused them any constitutional depravation. "[A] municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 798–99 (1986)). Rather, "to determine whether the [Village]'s liability is dependent on its officers, we look to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id*. Here, Kim, Steven, and Taylor assert that the Village's failure to properly train its

12

officers to adequately interact with domestic animals and use their firearms and thereby violated their constitutional rights. But here the Court has determined that Kim, Steven, and Taylor's constitutional rights were not violated because the evidence shows that when Greer fired upon their dog, he acted reasonably. And a municipality may not be held liable under *Monell* for failure to train its police officers if the plaintiffs cannot demonstrate any constitutional violation by a municipal employee, as it would necessitate an inconsistent verdict. *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007); *Maldonado*, 2016 WL 6093596, at *4 ("Where plaintiffs' evidence cannot show that there was a deprivation of rights, there can be no municipal liability, which would necessitate an inconsistent verdict.") Therefore, the Court finds for the Village on the failure to train claims. *Jenkins*, 487 F.3d at 492.

**V.     IIED Claim**

To recover on their IIED claim, Kim and Taylor must demonstrate that "(1) [Greer's] conduct was extreme and outrageous; (2) [Greer] either intended to inflict severe emotional distress or knew that there was a high probability that [his] conduct would do so; and (3) [Greer's] conduct actually caused severe emotional distress." *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst*, 345 Ill. App. 3d 929, (2004)). To be considered extreme and outrageous, the conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (quoting *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 21 (1992)).

Greer argues that the Court should grant summary judgment in his favor on Kim and Taylor's IIED claim, contending that they have failed to put forth any evidence that his actions in shooting dog amount to extreme and outrageous conduct. The Court evaluates several factors in

13

determining whether conduct is extreme or outrageous, including the defendant's reasonable belief in the legitimacy of his objective and his awareness of the plaintiff's susceptibility to emotional distress. *Watson*, 2020 WL 1248678, at *8 (citing *McGrath v. Fahey*, 126 Ill. 2d 78, 89–90 (1988)). Here, the record establishes that Greer had a reasonable belief that he was in immediate danger, fearful of getting injured, as Timber continued to nip and bark at him while chasing him. Further, no evidence in the record suggests that Greer knew of Kim or Taylor's susceptibility to emotional distress, nor does the record indicate that Greer intended to inflict severe emotional distress upon Taylor and Kim. And "although police officers are in a position of authority, which may make their conduct more likely to be extreme and outrageous, the conduct must still be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Moffett*, 2012 WL 2526624, at *2 (citation omitted). Taking all the evidence in Kim and Taylor's favor, Greer's actions still do not rise to the level of extreme and outrageous conduct that Illinois courts have found to be necessary. *Id*. ("The jury found that Officer Sandoval's conduct [by killing the plaintiff's dog because it lunged at him]… did not meet these high standards"). Therefore, because no genuine dispute of fact exists on the issue of extreme and outrageous conduct, Kim and Taylor cannot prevail on their IIED claim and the Court need not address the other elements of the claim. *Id*.

## VI. Remaining Claims against the Village

Finally, the Court must address the remaining *respondeat superior* and indemnification claims against the Village. *Respondeat superior* liability does not apply to § 1983 claims. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) ("The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be personally responsible for the deprivation of a constitutional right."). However, under Illinois

14

law, the Village may be held responsible on a *respondeat superior* theory for Greer's actions on a state law claim. *Watson*, 2020 WL 1248678, at *13; *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007) (under Illinois law, "an employer can be liable for the torts of an employee, but only for those torts that are committed within the scope of the employment."). But here, because the Court has determined that Kim and Taylor cannot prevail on their IIED claim nor Kim's assault claim, *respondeat superior* does not provide a basis to impose liability on the Village. Similarly, because the indemnification claim rests on a judgment against Greer and the underlying claims against Greer do not survive, the Court also grants summary judgment for the Village on the indemnification claim.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment [75]. The Court enters judgment for Defendants and terminates this case.

Dated: February 1, 2022

_____
SARA L. ELLIS
United States District Judge