**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

STEVEN KAILIN and KIM KAILIN
on their own behalf and on behalf of
their daughter, TAYLOR KAILIN a
minor

              Plaintiffs,

      v.

DELANTE GREER, and VILLAGE OF
GURNEE,

           Defendants.

Case No. 19 C 5188

Honorable Sunil R. Harjani

## <u>MEMORANDUM OPINION AND ORDER</u>

Steven and Kim Kailin called the Village of Gurnee Police Department to report that their daughter Taylor was assaulted by one of their son's friends in their home the prior night. In response to this report, Officer Delante Greer arrived at their house on July 26, 2019. After Kim Kailin opened the front door, the Kailin's dog chased Greer through Plaintiffs' flower bed and onto the neighbor's lawn, where Greer then shot and killed the dog. As a result of this interaction, Plaintiffs sued Greer and the Village of Gurnee, Illinois, identifying multiple theories of liability, but the only claims that survived for trial were for illegal seizure under 42 U.S.C. § 1983 against Greer, and a claim of municipal liability for failure to train and discipline under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

At trial, Plaintiffs Steven Kailin, Kim Kailin, Taylor Kailin, Greer, and a neighbor testified about what they saw occur. Greer was also wearing a body camera, which captured a video of the events, but there was no sound recorded during the incident. After hearing the testimony and seeing the evidence, the jury found for the Defendants. In other words, the jury found that Plaintiffs failed to establish that Greer unreasonably seized Plaintiffs' dog and that Gurnee was

deficient in training or disciplining its officers. Before the Court is Plaintiffs' amended motion for a new trial brought pursuant to Federal Rule of Civil Procedure 59(a). For the following reasons, the Court denies Plaintiffs' Rule 59(a) motion. [197].

## Discussion

Under Rule 59, a court may "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Bowers v. Dart*, 1 F.4th 513, 521 (7th Cir. 2021) (quoting *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014)). When considering whether the jury's verdict goes against the manifest weight of the evidence, the court performs its own neutral assessment of the evidence presented (*Lewis v. McLean*, 941 F.3d 886, 893 (7th Cir. 2019) (quoting *Mejia v. Cook Cty.*, 650 F.3d 631, 635 (7th Cir. 2011)). In assessing a motion for a new trial, the judge "has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Mejia*, 650 F.3d at 633 (citing *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 540 (1958) ("The trial judge in the federal system has powers denied the judges of many States to comment on the weight of evidence and credibility of witnesses[.]")). Ultimately, when asked to overturn a jury verdict, the court's "'narrow' role is to determine if a 'reasonable basis exists in the record to support the verdict.'" *Lewis*, 941 F.3d at 893 (quoting *Moore ex rel. Grady v. Tuelja*, 546 F.3d 423, 429 (7th Cir. 2008)). Put another way, a "verdict is set aside only if no rational jury could have rendered it." *Id*. The Seventh Circuit has cautioned that a court should grant a new trial "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned

or shocks our conscience." *Est. of Burford v. Acct. Prac. Sales, Inc.*, 851 F.3d 641, 646 (7th Cir. 2017).

Plaintiffs believe that they are entitled to a new trial for six reasons: (1) the Court erred in denying Plaintiffs' Motion in Limine No. 1, (2) the Court erred in denying Plaintiffs' Motion in Limine No. 6, (3) the Court erred in admitting a portion of Greer's body worn camera footage which contained hearsay testimony, (4) the Court erred by delaying ruling on Plaintiffs' motions, (5) the Court erred in not admitting Greer's discipline for failing to timely activate his body worn camera, and (6) the jury instructions misstated the law. Plaintiffs also assert that the cumulative effect of these errors prejudiced them. The Court will address each of these in turn.

## I.    Denying Plaintiffs' Motion in Limine No. 1

Plaintiffs' first argument for a new trial is that the Court erred in denying their Motion in Limine No. 1 to admit evidence relating to Greer's other incidents involving shooting at or near dogs. [197] at 6. Plaintiffs argue that this evidence goes to the reasonableness of Greer's belief that the dog would cause him death or great bodily harm and established that the Gurnee Police Department was on notice of its failure to train its officers.[1] Plaintiffs also argue that this was relevant for punitive damages. *Id.* Plaintiffs further contend that the Court erred in finding that Gurnee Police Chief Brian Smith's testimony did not open the door to the Gurnee Police Department's notice of prior incidents. *Id.* at 6–7.

---

[1] Plaintiffs also assert that it was an error to not allow them to "examine Defendant Greer regarding whether he knew that arching his taser weapon could cause a dog to change its path i.e. from witnessing this in Mercado." [197] at 6. While at trial, Plaintiffs' counsel asked Greer a series of questions about his use of a taser the day of the incident and his knowledge regarding whether the sound of arcing a taser "could divert the dog." [188] at 346:7-349:12. Plaintiffs' counsel elicited from Greer that he had the taser in his hand but did not attempt to use it. *Id.* Also, when asking about if it theoretically could divert a dog, Greer testified that the sound of a taser arcing "In theory, it could or couldn't" and that "If you want me to say that the noise would absolutely deter a dog, I can't say that in all honesty[.]" *Id.* Thus, Plaintiffs were allowed to, and did, examine Greer about his knowledge of what impact arching a taser could have on a dog, and they were only prohibited from eliciting specific facts of any prior incidents that were not relevant to the case.

"A determination made by a trial judge regarding the admissibility of evidence 'is treated with great deference because of the trial judge's first-hand exposure to the witnesses and the evidence as a whole, and because of his familiarity with the case and ability to gauge the likely impact of the evidence in the context of the entire proceeding.'" *Doornbos v. City of Chicago*, 868 F.3d 572, 579 (7th Cir. 2017) (quoiting *United States v. Wash*, 231 F.3d 366, 371 (7th Cir. 2000)). Evidentiary errors warrant a new trial only "if the evidentiary errors had 'a substantial and injurious effect or influence on the determination of a jury and the result is inconsistent with substantial justice.'" *Burton v. E.I. du Pont de Nemours & Co., Inc.*, 994 F.3d 791, 812 (7th Cir. 2021) (quoting *Fields v. City of Chicago*, 981 F.3d 534, 544 (7th Cir. 2020)). "In other words," if there was a "flawed" evidentiary ruling, "there must be a significant chance that the flawed ruling affected the outcome of the trial." *Burton v. City of Zion*, 901 F.3d 772, 776 (7th Cir. 2018). "A party seeking a new trial based on erroneous evidentiary rulings bears a 'heavy burden.'" *Love v. City of Chicago*, 2021 WL 5917570, at *4 (7th Cir. 2021) (quoting *Alverio v. Sam's Warehouse Club*, 253 F.3d 933, 942 (7th Cir. 2001)).

Much time was spent in advance of and during the trial on this evidentiary question. In their Motion in Limine No. 1, Plaintiffs moved to admit evidence of Greer shooting a dog six months before the incident in this case, where Greer also claimed that a dog was charging at him. [118] ¶ 2. Plaintiffs asserted that this incident showed that Greer had already illegally seized another dog, but it was never adjudicated as such by any court of law, and when the Gurnee Police Department investigated this incident, it found Greer's use of force was justified. Plaintiffs also sought to admit evidence that Greer fired a warning shot towards another canine, while he was employed as a North Chicago police officer. *Id.* ¶ 9. In their original motion, Plaintiffs claim that Greer "had a pattern of shooting and over-reaction by unreasonably believing he was being

4

threatened by a dog when a reasonable officer would not perceive such a threat." *Id.* ¶ 10. This motion was denied at the pretrial conference, with additional detail provided in a later Order. [153]; [157]. The Court found that Plaintiffs failed to provide a propensity-free chain of reasoning to admit the evidence of prior dog shootings under Federal Rule of Evidence 404. The inquiry in this case was whether Greer was reasonable in using deadly force, specifically according to the Seventh Circuit, whether the dog posed an immediate danger and the use of force was unavoidable. *Kailin v. Gurnee*, 77 F.4th 476, n.1 (7th Cir. 2023). Greer's past shootings involving dogs to show a pattern of unreasonably shooting at dogs was essentially the equivalent of arguing propensity and had no relationship to the elements that Plaintiffs had to prove, which centered around whether a reasonable officer would be justified in using deadly force under the circumstances. Further, the Court found that pursuant to Rule 403, the evidence of his prior shooting was substantially more prejudicial than probative, as the probative value was almost non-existent compared to the high likelihood of creating unfair prejudice. The Court also denied the motion as it related to possible notice to Gurnee, as Gurnee found Greer to be justified in his use of force, so this could not put Gurnee on notice of its failure to train or discipline, and there was no evidence that Gurnee was aware of the incident at Greer's prior job at North Chicago. It was also excluded under Rule 403 as even if the prior incident had some minimal probative value on the Monell claim, it was far outweighed by the prejudicial impact of this testimony.

Then, on the first day of trial, Plaintiffs made an oral motion for this Court to reconsider the denial of Plaintiffs' Motion in Limine No. 1 on the basis that Greer's conduct should be admissible as it relates to their punitive damages claim. [171] at 1. The Court denied this from the bench, with additional detail provided in a written Order, explaining that this evidence could not be used to establish that Greer was a recidivist for punitive damages as Gurnee's investigation

found the prior dog shooting to be justified and no judge or jury adjudicated this conduct as improper, unreasonable, or illegal. *Id.* at 2. As the Court noted, simply because this case involved a dog shooting, like the prior case, does not automatically make it improper conduct. Further, courts in the Northern District of Illinois routinely bar plaintiffs from entering this type of evidence as the basis for punitive damages. *See Kaufman v. City of Chicago*, 2021 WL 1885985, at *9 (N.D. Ill. May 11, 2021); *Rivera v. Guevara*, 2018 WL 11468923, at *2 (N.D. Ill. June 1, 2018); *Hill v. City of Chicago*, 2011 WL 3840336, at *3 (N.D. Ill. Aug. 30, 2011). The Court also explained that it was barring this evidence under Rule 403 as any probative value is substantially outweighed by the unfair prejudice to the Defendants and it would confuse the evidence with another dog shooting and cause undue delay because it would involve a mini-trial about whether the prior incident was an illegal seizure and whether Defendant Greer acted reasonably during this separate incident. [171] at 3.

In both written Orders, the Court explained at length why Plaintiffs failed to provide a propensity-free chain of reasoning to admit the evidence of any prior incidents. [157]; [171]. Yet, Plaintiffs continue to **unequivocally argue** in their present motion that this evidence was necessary "to provide the jury a complete and accurate picture of Greer's **character**." [197] at 7 (emphasis added). The federal rules bar evidence from being used to establish a defendant's propensity to do something; this was true when the Court first ruled on Plaintiffs' motion in limine and remains true today. *See* Fed. R. Evid. 404(b). Thus, Plaintiffs were properly prohibited from introducing evidence to suggest that Greer had a propensity to shoot dogs.

Nor do Plaintiffs provide any new arguments or provide new evidence to show why this evidence should have been admitted to establish that the Gurnee Police Department had notice of a failure to train. [197] at 6. Plaintiffs assert that the door was opened to discuss the prior incident

when Chief Smith testified that there was no need for specific training regarding domestic animals prior to this event. *Id.* at 6–7. But this argument fails to address the reason this testimony did not provide a basis for admitting the evidence—that the Gurnee Police Department found Greer was justified in his use of force in the prior incident, so it did not provide a basis to establish that Gurnee had notice of a need to train on *unjustified* uses of force against domestic animals. *See* [157] at 3; [188] at 317:12-319:17. Plaintiffs' brief is silent on this issue.

Likewise, Plaintiffs do not make any new legal or factual arguments as to why this evidence should have been admitted for the purpose of punitive damages; they merely assert that it should have. [197] at 6–7. This does not provide an explanation of any error on the part of the Court's ruling on the record at trial or in its subsequent written order. *See* [171]; [188] at 328:9-330:22. Further, a plaintiff cannot suffer prejudice from a ruling "on admissibility of evidence relating to damages" when they lost on the issue of liability, so the jury did not reach the question of damages. *O'Donnell v. Caine Weiner Co., LLC*, 935 F.3d 549, 552 (7th Cir. 2019). Plaintiffs lost on the issue of liability—the jury never had to consider punitive damages. Thus, Plaintiffs fail to show an error in denying admission of this evidence.

Moreover, even if there was probative value to this evidence, it should still be excluded if it has a high likelihood of leading a jury to draw a forbidden propensity inference. *United States v. Gomez*, 763 F.3d 845, 856–57 (7th Cir. 2014). As detailed in the Court's prior Orders, this evidence is also barred under Rule 403. [157]; [171]. Plaintiffs make no arguments about why this evidence should have been admitted over the Rule 403 objection. [197] at 6–7. Whatever probative value the evidence may have had, it was substantially outweighed by the prejudice to Greer and the delay and confusion that would have occurred by allowing evidence of a different dog's reaction to the same officer which would essentially result in a mini-trial on that separate shooting incident,

7

especially when there was no finding of liability or fault in the prior shooting. *See Kaufman*, 2021 WL 1885985, at *3–4 (finding there was no propensity-free purpose to admit the officer's prior conduct, and even if there was, his knowledge of those events had no relationship to the incident in question); *Cf. Simmons v. City of Chicago*, 2017 WL 3704844, at *5 (N.D. Ill. Aug. 28, 2017) (excluding evidence under Rule 403 of a prior lawsuit against an officer for excessive force, even if it may have been admissible under Rule 404(b), when there was a jury verdict for the officers but it was on appeal because of "the waste of time involved in explaining the trial, the appeal, and the purportedly excluded evidence far outweighs the probative value of the evidence.").

A motion for a new trial is "not merely intended to secure a forum for the relitigation of old matters or to afford the parties the opportunity to present the case under new theories; instead, the motion is a device properly used to correct manifest errors of law or fact or to present newly discovered evidence." *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 n.4 (7th Cir. 1990). Plaintiffs have not identified any manifest errors of law or fact and, instead, merely reraise issues the Court already ruled on that they disagree with. [157]; [171]. Thus, Plaintiffs' motion for a new trial on the basis of denying their Motion in Limine No. 1 is denied.

## II.     Denying Plaintiffs' Motion in Limine No. 6

Plaintiffs next assert that the Court erred in denying Plaintiffs' Motion in Limine No. 6 to admit evidence about Greer's termination for cause from the Gurnee Police Department. [197] at 7–8. Plaintiffs' Motion in Limine No. 6 was filed on December 3, 2024, two weeks after the final pretrial conference, and less than a week before the start of trial. Plaintiffs sought to admit evidence that Greer was terminated for cause from his position at the Gurnee Police Department on January 13, 2022. [164]. This termination was not related to this incident or the prior dog shooting incident. *Id.* ¶¶ 2–3. Instead, it related to other alleged misconduct by Greer that occurred

after the date of the incident at Plaintiffs' home. *Id.* ¶¶ 4–11. Plaintiffs argued that three of these incidents involved Greer failing to activate his body worn camera, purposefully turning it off, or protesting being recorded. *Id.* ¶ 14. On the first day of trial, the Court granted the motion in part and denied it in part. [170]; [187] at 8:24-15:2. The Court granted the motion as to Plaintiffs' ability to question Greer about previous incidents of failing to turn on a body camera, as this went to Plaintiffs' theory of a lack of accident or mistake, but barred them from inquiring as to his termination. [187] at 9:5-22. The Court reserved ruling on whether Plaintiffs could ask Greer about his general conduct during his employment, as it would depend on what Defendants elicited about his performance during his testimony. *Id.* at 9:23-10:8. As to the other events underlying the termination, the Court found there was no theory of admissibility under Rule 404(b) and that it would be unfairly prejudicial to admit evidence of different acts that the jury would use for propensity. *Id.* at 10:9-11:12. After this initial ruling on the record the morning of the first day of trial, Plaintiffs' counsel interjected and said that she "made a mistake" and that she also wanted to use this evidence because Greer testified at his deposition that he was a juvenile officer, but one of the reasons listed for his termination was a failure to notify a juvenile officer. *Id.* at 11:13-12:10. Therefore, according to Plaintiffs, Greer lied at his deposition about being a juvenile officer. *Id.* After listening to this, the Court explained that Plaintiffs failed to put this in their motion or provide a transcript of the deposition where this alleged statement occurred. *Id.* at 12:11-21. The Court then instructed Plaintiffs' counsel to find the deposition transcript and discuss with defense counsel, then to inform the Court if there is an issue, and that should Plaintiffs want to use it for a prior inconsistent statement, the Court would address it later once there was a transcript. *Id.* This issue was never reraised with the Court during trial.

Here, Plaintiffs argue that the Court erred in not allowing Plaintiffs to cross examine Greer about how he was terminated in part for failing to notify a juvenile officer before interrogating a juvenile, but that he testified at his deposition that he was a juvenile officer. [197] at 8. But the Court never made such a ruling. The Court instructed Plaintiffs to obtain a copy of the deposition transcript and discuss any discrepancies with Defendants, and if there was an issue to raise it with the Court and that inconsistent statements would be dealt with later. [187] 12:11-21. But Plaintiffs never reraised this issue. The Court also never received a copy of the deposition transcript, as it requested, and so the Court never made a ruling on this issue. Thus, Plaintiffs fail to identify a "specific erroneous ruling" as the issue was never brought before the Court, and this argument is waived. *Love*, 2021 WL 5917570, at *4 (finding an argument that a trial court's evidentiary ruling was erroneous was waived when the party failed to identify a specific erroneous ruling).

Plaintiffs also contend that Greer was terminated in part for using offensive language, and that Plaintiffs testified that Greer yelled "oh shit, you have a dog" prior to shooting the dog. [197] at 8. The Court ruled that Plaintiffs lacked a theory of admissibility for the other acts relating to his termination, including his use of offensive language, under Rule 404(b) because these acts do not relate to the question of what a reasonable officer would do when presented with the circumstances facing Greer during the incident with Plaintiffs' dog. [187] at 10:9-16; 12:22-13:6. Nor would the acts underlying his termination go to his credibility or issue of bias as the conduct forming the basis of the termination was different than the acts that occurred here. *Id.* at 10:16-20. Further, it would be unfairly prejudicial under Rule 403 to admit this evidence. *Id.* at 10:21-11:7. Now, Plaintiffs contend that the Court should have considered whether this should have been allowed during cross examination under Rule 608 as an act of deceit and towards Greer's character for truthfulness. This is a new argument, and was not made a trial, and thus cannot be considered

10

on a motion for new trial.[2]  Also, Plaintiffs do not explain how Greer's prior use of offensive language would attack his character for truthfulness under Rule 608.  Further, even if it were admissible, it would not change the Rule 403 balancing as the jury would still use it for improper propensity purposes and the fact that Greer used offensive language is not relevant to the claims of a seizure by Greer or a failure to train or discipline by Gurnee.  Therefore, Plaintiffs fail to meet their heavy burden that there was a flawed evidentiary ruling, and if so that there was a significant chance that it affected the outcome of the trial.

### III.    Admitting a Portion of Greer's Body Worn Camera Footage

Next, Plaintiffs contend that the Court erred by admitting a portion of Greer's body worn camera footage that contained hearsay statements of witnesses that did not testify.  Plaintiffs' argument on this, in its entirety, is as follows: "Plaintiffs objected to the admission of Defendant Greer's body worn camera footage which contained the hearsay testimony of witnesses who did not testify at trial. (Tr. Vol. I 31:2-19)[.]" [197] at 8.  The cited portion of the trial transcript is Plaintiffs' counsel stating that she only intends to use a portion of the body worn camera footage but that Defendants list the entire video as a trial exhibit. [187] at 31:2-19.  As an initial matter, Plaintiffs' single sentence of argument on this point is insufficient, and as the Seventh Circuit has made clear "perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived." *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) (quoting *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021)).  As Plaintiffs fail to identify any error, this is not grounds for a new trial.

---

[2] Failing to object to the introduction of evidence at trial limits the review to the "extremely limited" plain-error review. *Sanchez v. City of Chicago*, 880 F.3d 349, 359– 60 (7th Cir. 2018).  Plain error can only be found if plaintiffs "can demonstrate (1) that exceptional circumstances exist, (2) that substantial rights are affected, and (3) that a miscarriage of justice will result if the [plain-error] doctrine is not applied." *Id.* at 360 (7th Cir. 2018) (quoting *Stringel v. Methodist Hosp. of Ind., Inc.*, 89 F.3d 415, 421 (7th Cir. 1996).  Plaintiffs fail to make any such arguments or showings here.

But, for clarity of the record, the Court will recount the relevant information here. The Court ruled as part of the motions in limine that third-party witness statements were hearsay and were excluded. *Id.* at 33:17-24. These motions did not relate to Greer's body worn camera footage, but other video recordings of statements of neighbors about the incident and Plaintiffs' dog. [119]; [121]. The Court reserved ruling on the relevance of this testimony but required that, if these witnesses were to testify, then they had to be in person in court as the videos were hearsay. [153]; [187] at 33:17-24. The videos containing these third-party witness statements were never admitted at trial.

The video Plaintiffs currently reference was **partially admitted** at trial as Plaintiffs' exhibit 1. As background, Plaintiffs' exhibit 1 is the footage from Greer's body worn camera during and after the incident. The full video was 10 minutes and 51 seconds long. It depicts Greer walking up to Plaintiffs' house and his interaction with Kim Kailin before he turns and runs through the Plaintiffs' flowers and into the neighbor's yard and ultimately shoots the dog. This part of the video does not have sound. Then there are several minutes of footage of Greer speaking with Plaintiffs and their neighbors after the incident. Throughout the trial, both parties used clips of this video to show what occurred to the jury, but the video was never displayed in full. Instead, the portions that were played were noted by timestamps and only those portions were provided to the jury. [181].

The morning of the first day of trial, Plaintiffs raised concerns that exhibit 1 contained statements from the parties, but also third-party statements. [187] at 31:2-33:12. At which point, the Court reiterated its ruling that third-party witness statements were hearsay and not admissible. *Id.* at 33:13–24. During trial, Plaintiffs raised a concern that Plaintiffs' exhibit 1 had been admitted into evidence but that it contained hearsay statements from third parties not testifying at trial. [189]

at 480:1-13.  But in reality, the Court had never admitted the entirety of Plaintiffs' exhibit 1. Plaintiffs played the video from the start to 0:52 seconds and the Defendants played it from the start to 1:51 seconds. *Id.* at 481:3-482:24.  It was agreed that the video would be cut to only show the time from zero to 1:51.[3] *Id.* at 482:6-24.  Plaintiffs' counsel stated, "We have no problem with that." *Id.* at 482:9.  Thus, the Court found that there was no dispute as to what part of Plaintiffs' exhibit 1 would be introduced as evidence. *Id.* at 482:23-24.

The second part of the video was played by Defendants during the cross examination of Steven Kailin.  [189] at 538:21-539:11.  This portion showed Steven Kailin speaking to Greer after the incident and shaking his hand, which is what defense counsel asked about during their questioning.  But at the end of the video a neighbor can be heard talking for a few seconds. Plaintiffs' counsel did not object when this portion of the video was played. *Id.*

At the end of the third day of trial, after both parties finished presenting witnesses and evidence, Plaintiffs reraised concerns about Defendants playing a portion of a video that they claimed was not admitted into evidence and referenced Defendants exhibit 2.[4]  [189] at 734:9-735:3.  Defendants said this was Defendants exhibits 18 and 19, which were admitted and only included the Plaintiffs speaking. *Id.* at 735:4-18.  Plaintiffs' counsel then admitted to being "confused" over what video was being discussed. *Id.* at 735:24-736:9.  Given counsel's confusion, the court then instructed the parties to confer about the video clips that were played and to raise any problems the following morning. *Id.* at 736:11-22.  The issue of third-party statements in the videos being hearsay was never raised.

---

[3] During the direct examination of Steven Kailin, the video was played for one additional second, bringing the range to 0:00-1:52.

[4] Plaintiffs' counsel initially referenced exhibit 1 but then changed that reference to Defendants' exhibit 2. [189] at 734:9-25.

In their present motion, Plaintiffs do not identify any third-party witness statements from the video that were shown to the jury or admitted. [197] at 8. Further, as detailed above, the footage Plaintiffs reference in their motion was not given to the jury in its entirety, and instead two portions of the video that were played and admitted, denoted by their timestamps, were clipped from the main video and provided to the jury. [181]. Further, although no hearsay statements were identified by Plaintiffs in their motion, the Court rewatched the admitted portions of the video. In the first part of the video admitted into evidence, titled Pla-PX-1A, there are no audible third-party statements beyond background noise. In the second part of the video admitted into evidence, titled Pla-PX-1B, the only audible third-party statement comes from a neighbor walking into frame who stated "Oh my god, she is such a sweet dog" in the final few seconds of the clip. Plaintiffs' counsel was aware of this and affirmatively approved of the exhibits being provided to the jury by signing the exhibit list. [181]. As the Seventh Circuit has stated "a party cannot complain of errors which it has committed, invited, induced the court to make, or to which it consented." *Sanchez v. City of Chicago*, 880 F.3d 349, 360 (7th Cir. 2018) (quoting *Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 224 (7th Cir. 1981)). As the Court explained at trial, no portion of Plaintiffs' exhibit 1 was provided to the jury that Plaintiffs did not signoff on, and certainly the entirety of Plaintiffs' exhibit 1 was **not** admitted at trial, but Plaintiffs' counsel has once again raised this completely meritless issue.

## IV. Court's Delay in Ruling on Plaintiffs' Motions

Next, Plaintiffs assert that the Court's delay on its rulings relating to whether Plaintiffs could admit evidence of Greer's prior dog shootings prejudiced them. Specifically, Plaintiffs contend that the Court's "delay ruling on the admissibility of Defendant Greer's prior dog shootings . . . caused Plaintiffs to have to call Defendant Greer out of order." [197] at 9. Also, that

14

the Court delayed in ruling on whether the punitive damages provided a basis on which they could bring in the prior shootings. *Id.* Lastly, Plaintiffs contend the Court delayed in ruling on whether Chief Brian Smith opened the door to this line of questioning. *Id.*

Before addressing Plaintiffs' argument, it is first important to recount the timeline of events and these rulings. The Court initially denied Plaintiffs' motion in limine on whether Plaintiffs could admit evidence of Greer's prior shootings on the record at the pretrial conference on November 19, 2024. [151]; [152]. The Court then followed up its ruling with a detailed Order explaining why that motion was denied on November 25, 2024. [157]. Then on the first day of trial, Plaintiffs made an oral motion for this Court to reconsider the denial of Plaintiffs' Motion in Limine No. 1, on the basis that Greer's prior shootings should be admissible as it relates to their punitive damages claim. [171]; [187] at 23:16-24:21. This was a new argument about why Plaintiffs thought the prior shootings should be admitted. [187] at 23:16-23. As the new argument was sprung on the Court and Defendants the morning of trial, the Court reserved ruling on the punitive damages issue to allow for research overnight and that it would be discussed the following day. [187] at 29:12-17. In the interim, the Court's prior ruling that there should not be any discussion of the shootings remained in place. [187] at 29:18-21. The next morning, the Court allowed the parties to present anything else they had on the matter. [188] 148:16-21. Both Plaintiffs and Defendants presented arguments, which the Court took under advisement and said it would issue a ruling shortly. *Id.* at 148:22-155:4. There was then no break in the proceedings between these arguments and Plaintiffs' request to have Greer take the witness stand. *Id.* at 218:11-15. At which point, the Court informed counsel, that this issue would be heard over the lunch break. *Id.* at 219:2-7. The Court then ruled on the punitive damages issue over the lunch break,

denying the motion and explaining its reasoning on the record. *Id.* at 328:9-330:22. The Court also issued a written ruling on this matter the same day. [171].

Plaintiffs fail to identify where in this timeline there was a delay and, after this recitation of events, it is clear that there was no delay in ruling on Plaintiffs' Motion in Limine No. 1. Plaintiffs received a ruling at the pretrial conference on their original motion in limine and a ruling on their motion to reconsider the day after they first raised it—the same day they first provided any legal arguments with case law. Moreover, as the motion to reconsider was based on the admissibility of evidence for the purposes of punitive damages, Plaintiffs cannot suffer prejudice from a ruling "on admissibility of evidence relating to damages" as they lost on the issue of liability, so the jury did not reach the question of damages. *O'Donnell*, 935 F.3d at 552. To the extent Plaintiffs contend the delay hampered their preferred order in calling their witnesses, that delay was self-inflicted.

Plaintiffs also assert that the Court delayed in ruling on whether Chief Smith opened the door to this line of questioning during his testimony about there being no need for training as it related to Plaintiffs' *Monell* claim. Doc. [197] at 9. But there was also no delay in this ruling. Chief Smith testified in the late morning of December 10, 2024. Plaintiffs' counsel raised the argument that he opened the door to testimony about the prior shootings after his testimony concluded. [188] at 295:2-4. At sidebar, the Court instructed that, as there were only 20 minutes before the lunch break, Plaintiffs could start with Greer's testimony before ruling on this, and that this could be dealt with over lunch instead of at sidebar, to which Plaintiffs' counsel responded "Okay." *Id.* at 295:5-11. The Parties then made their arguments about this over the lunch break and the Court immediately ruled on the matter, before counsel left for lunch. *Id.* at 315:13-319:17. Thus, there was no delay.

16

Further, while Chief Smith did not open the door, Plaintiffs were allowed to elicit evidence that there was no training on domestic animal shootings prior to July 2019, and that there was training after this incident with Greer. [188] at 227:8-233:5. As part of the motions in limine, the Court ruled that Plaintiffs could inquire generally about "training and discipline relating to interacting with pets and shooting of pets, as it is relevant to the *Monell* claim." [153]. This was permitted by the Court as it related to Plaintiffs' failure to train claim, but the Court excluded testimony about Greer's prior shooting as it did not establish notice on the part of Gurnee since that shooting was found to be justified. [188] at 318:8-20. Moreover, on the third day of trial, Plaintiffs again tried to admit evidence of the prior shootings as establishing that Gurnee was on notice. [189] at 470:4-475:20. This time, Plaintiffs argued that Sargeant Michael Mann, who was scheduled to testify that day, testified at his deposition that he was aware of the prior shooting involving Greer and a second shooting involving a different officer and that this was evidence that Gurnee was on notice. *Id.* Plaintiffs sought to elicit this testimony from Sargeant Mann, and offered to do so without any mention of Greer's involvement. *Id.* at 472:7-10. The Court found that this testimony was relevant to Plaintiffs' *Monell* claim and that it lacked the associated prejudicial impact to Greer because his name would not be mentioned. *Id.* at 477:14-479:23. Therefore, the Court allowed Plaintiffs to question Sargeant Mann about his knowledge of prior incidents of Gurnee police officers shooting dogs, without mentioning the names of any of the officers involved. *Id.* Thus, as established above, Plaintiffs had several opportunities to elicit evidence about their failure to train claim.

Lastly, Plaintiffs argue that the "Court vacillated regarding the relevance of Defendant Greer's prior discipline to Plaintiffs' Monell claim. (Tr. Vol. 2A, 268:1-25; 269:1-8)[.]" [197] at 9. Plaintiffs do not explain what they mean by this argument. In the cited section of the trial

transcript, Plaintiffs' counsel made a hearsay objection to the defense questioning Chief Smith about Gurnee's firearms policy. During the sidebar, Plaintiffs' counsel said that Gurnee's investigation and ultimate finding were "irrelevant to whether there is a Monell." [188] at 268:1-5. The Court then stated that because Plaintiffs have a failure to discipline claim, Defendants could ask the witnesses about why Greer was not disciplined for the use of force at issue, but that, for the reasons already given under Rule 403 and 404, the evidence of the prior shootings was not admissible. *Id.* at 267:18-269:8. First, this is consistent with the Court's prior rulings barring the evidence of the prior shootings, so there is no argument that the court "vacillated" regarding its rulings. Second, as Plaintiffs provide no case law or explain this argument in any meaningful way in their present motion, it is perfunctory and undeveloped, and as such is waived. *Rock Hemp*, 51 F.4th at 704. Therefore, this argument also provides no basis for a new trial.

### V. Not Admitting Greer's Post-Incident Discipline

Plaintiffs next contend that the Court erred by excluding Greer's one day suspension for "not timely activating his body worn camera initially while responding to a call for service at the Kailin's." [197] at 9. This is the entirety of Plaintiffs' argument on this issue. As this is "perfunctory and undeveloped" as well as "unsupported by pertinent authority" this argument is waived. *Rock Hemp*, 51 F.4th at 704.

Furthermore, as relates to this argument, Defendants' Motion in Limine No. 1 was to exclude evidence of Greer not being disciplined for his use of force during this event, that he was disciplined for failing to turn on his body worn camera upon immediately exiting his squad car, and that he was terminated from his position at the Gurnee Police Department years after this incident. [111]. Plaintiffs objected to this and sought to admit this evidence. [128]. The Court granted in part and denied in part Defendants' motion. [153]. Relevant to Plaintiffs' argument

here, the Court ruled "the fact that Defendant Greer did not activate the audio for his camera, that he should have activated it per department policy, and any reasoning he had for not doing so may be examined at trial." *Id.* But evidence about Greer's discipline after the fact was excluded, because it was irrelevant to the claims at trial and was likely to confuse the jury under Rule 403. *Id.* Plaintiffs fail to articulate any reason why this ruling was improper, how they were prejudiced, or provide any case law in support of this single sentence argument. Further, Plaintiffs do not provide any grounds or theories of admissibility for this evidence in their motion. Thus, this is not a valid reason for a new trial.

## VI. Jury Instructions

Lastly, Plaintiffs argue that certain jury instructions misstated the law. At the jury instruction conference, Plaintiffs objected to jury instructions 19, 20, and 21. [189] at 634:9-10; *see* [174]. Those objections were heard and overruled. [189] at 634:11-637:17. The instructions Plaintiffs objected to at the pretrial conference were:

- Instruction 19: The killing of a pet constitutes a seizure.

- Instruction 20: The use of deadly force against a pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable.

- Instruction 21: The reasonableness of a seizure depends on the totality of the circumstances. You must decide whether Defendant's use of force was unreasonable from the perspective of a reasonable officer facing the same circumstances that Defendant faced. You must make this decision based on what the officer knew at the time of the use of force, not based on matters learned after the use of force. In deciding whether Defendant's use of force

was unreasonable, you must not consider whether Defendant's intentions
were good or bad.[5]

Plaintiffs do not articulate in their motion any reasons why these instructions were improper, and
instead merely state that the "Court found that Plaintiffs had preserved those objections. (Tr. Vol.
3A 645:1-2)[.]" [197] at 10.  Plaintiffs also contend, without citation, that they "also summited a
proposed instruction defining the term 'seizure' referring to the shooting of a dog. The Court
rejected such instruction." [197] at 10.

"District courts have substantial discretion in how to precisely word jury instructions,
provided that the final result, read as a whole, is a complete and correct statement of the law."
*Ernst v. City of Chicago*, 837 F.3d 788, 794 (7th Cir. 2016) (citing *Lewis v. City of Chi. Police
Dep't*, 590 F.3d 427, 433 (7th Cir. 2009)).  "[T]o win a new trial based on an incorrect jury
instruction, [Plaintiffs] must show both that (1) the instruction inadequately states Seventh Circuit
law; and (2) the error likely confused or misled the jury causing prejudice to the [Plaintiffs]."
*O'Donnell*, 935 F.3d at 552 (quoting *Gile v. United Airlines, Inc.*, 213 F.3d 365, 374–75 (7th Cir.
2000).  Plaintiffs do not make either of these showings.

As an initial matter, Plaintiffs do not argue that any of their identified errors—either giving
Instructions 19, 20, and 21 or not giving their alleged seizure instruction—were likely to confuse
or mislead the jury.  Therefore, Plaintiffs fail to make the required showing for a new trial.

Further, Plaintiffs' only argument regarding the adequacy of Seventh Circuit case law is
the failure to give an instruction defining the term seizure was reversable error because the
"Plaintiff in *Saathoff* submitted an instruction from *Villo*, 547 F. 3d 710: '[U]se of deadly force
against a household pet is reasonable only if the pet poses an immediate danger and the use of

---

[5] [189] at 634:9-637:17; [174] at 19–21.

force is unavoidable.'" [197] at 10. This argument fails for several reasons. First, the district court in *Saathoff* refused to give the plaintiff's proposed instruction because it did not fit the facts of the case, and the Seventh Circuit affirmed that refusal. *Saathoff v. Davis*, 826 F.3d 925, 933 (7th Cir. 2016). Second, the jury instructions given in this case included the language from *Viilo* which Plaintiffs cite, with the exception of the word household. *Compare* [176] Instruction 21[6] ("The use of deadly force against a pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable."), *with Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008) ("the use of deadly force against a household pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable."). Thus, the Court gave the instruction Plaintiffs request in their motion, and Plaintiffs failed to establish the instructions given inadequately stated Seventh Circuit law.

As to the other instructions that were given, Plaintiffs make no arguments regarding why they inadequately state Seventh Circuit law. The Court primarily used the Seventh Circuit Pattern Instructions in this case. Therefore, Plaintiffs fail to show they should be granted a new trial based on the jury instructions.

## VII. Cumulative Effect of the Errors

Finally, Plaintiffs assert that the cumulative effect of these errors deprived Plaintiffs of a fair trial. [197] at 12. To succeed on this argument, Plaintiffs must show "(1) that multiple errors occurred at trial; and (2) those errors, in the context of the entire trial, were so severe as to have rendered his trial fundamentally unfair." *United States v. Powell*, 652 F.3d 702, 706 (7th Cir. 2011). Plaintiffs failed both prongs as they have not established that multiple errors occurred or that those

---

[6] This instruction was numbered Instruction 20 at the jury instruction conference. *Compare* [174] Instruction 20, *with* [176] Instruction 21. A proposed instruction was added as Instruction 18 during the jury instruction conference, resulting in instructions 19, 20, and 21 from the jury instruction conference being number 20, 21, and 22 in the final jury instructions. *See* [189] 645:4-655:18. Other than being renumbered, these instructions remained the same.

errors were so severe as to render the trial fundamentally unfair. "Civil litigants are entitled 'to a fair trial, not a perfect one.'" *Carter v. City of Wauwatosa*, 114 F.4th 866, 882 (7th Cir. 2024) (quoting *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993)). Having reviewed the record and analyzed Plaintiffs' arguments, the Court finds that Plaintiffs received a fair trial, for all the reasons stated above.

### Conclusion

The Court fully appreciates that Plaintiffs feel strongly about their claim that Defendant Greer improperly shot their dog. They filed suit and had their case heard before a jury. But the jury disagreed with Plaintiffs and found for Defendants. Plaintiffs have failed to identify any errors warranting a new trial. Plaintiffs' Amended Motion for a New Trial is denied.

**SO ORDERED.**

Dated: July 28, 2025

_____
Sunil R. Harjani
United States District Judge